### ARIZONA & N. M. RY. CO. v. FOLEY.

(Circuit Court of Appeals, Ninth Circuit. August 1, 1921.)

#### No. 3649.

Master and servant ☞69—Under statute, brakeman held entitled for eight hours to contract wages for ten hours.

Under Adamson Act, §§ 3, 4 (Comp. St. §§ 8680c, 8680d), providing that, during a certain period, wages of railway employees should not be reduced below the existing standard day's wage, and that time in excess of eight hours should be paid for pro rata, where a contract in force when the act took effect provided for a ten-hour day, and provided that the rates of wages prescribed should not be taken as a basis for the purpose of figuring a schedule under an eight-hour day, if subsequently adopted, there was no fixed schedule of rates between the parties, and a brakeman was entitled for an eight-hour day to as much as he had been receiving for a ten-hour day.

In Error to the District Court of the United States for the District of Arizona; Edward S. Farrington, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by H. E. Foley against the Arizona & New Mexico Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The pleadings and the agreed statement of facts upon which the case was submitted disclose the following:

The defendant in the court below (plaintiff in error here) operates a railroad 111 miles in length, extending from Clifton, Ariz., to Lordsburg, N. M. The plaintiff in the action (defendant in error here) was a brakeman in its employ from August 6, 1916, to April 27, 1917, during which time he was a member of the Brotherhood of Railroad Trainmen.

Prior to the employment of the defendant in error there was a contract of employment, with a schedule of wages agreed upon between the plaintiff in error and the conductors and brakemen in its employ, and the Brotherhood of Railroad Trainmen, which became effective April 1, 1911, referred to in the agreed statement of facts as Schedule A.

March 29, 1916, the Brotherhood of Railroad Trainmen, comprising the Brotherhood of Locomotive Engineers and the Brotherhood of Locomotive Firemen and Engineers and the Brotherhood of Trainmen, being national associations of engineers, firemen, conductors, and brakemen, engaged in railway service in the United States, submitted to the railway employers of the United States a certain "schedule of demands to govern" the respective parties thereto, which is referred to in the agreed statement of facts as Schedule B.

During the month of June, 1916, while there was pending negotiations between the railway employees of the United States and the Brotherhood of Trainmen, the train employees of the plaintiff in error presented for its consideration a proposed new wage schedule "upon the eight-hour and time and one-half overtime basis, among which schedules and demands was one made in behalf of conductors and brakemen of" the plaintiff in error, section 1 of article I of which is as follows:

"Rates of pay in passenger service will be: Conductors, $182.00 per calendar month. Brakemen, $117.00 per calendar month. Eight hours to constitute a day. Overtime 1½ times pro rate rate. One crew to be paid for the calendar days, provided they lose no time on their own account. Extra service to be paid for proportionately.

"Rates of pay in freight work and mixed service will be: Conductors, $140.00 per month. Brakemen, $107.00 per month. Twenty-six (26) days to constitute a month's work. Eight hours (8) to constitute a day. Overtime after eight hours at 1½ the pro rata rate.

"The senior crew to be paid for twenty-six (26) days each month. (Overtime not to apply as part of the month's work.) Extra crews to be paid proportionately for amount and class of service performed."

That proposed schedule is referred to in the agreed statement as Schedule C.

The agreed statement shows that the plaintiff in error and its railway employees, including its conductors and brakemen, "were not desirous of entering into the national controversy then in progress between said National Brotherhoods of Trainmen and said railway employers of the United States as aforesaid, and to that end and for the purpose of comprising and settling the demands of defendant's employees, and in particular of its conductors and brakemen, pending the settlement of said controversy between said National Brotherhoods of Trainmen and said railway employers of the United States, entered into and adopted certain schedules and contracts of employment to govern between the employees of this defendant and this defendant, among which was that certain schedule and contract of employment between this defendant and its conductors and brakemen" specifically set out, including this:

"The following rates of pay and regulations will govern the employment and compensation of conductors and brakemen in the service of the Arizona & New Mexico Railway Company, and will be in effect from June 16, 1916. No revision or abrogation of this contract or agreement will be made with-

out at least thirty days' notice in writing. All rates of pay, rules, and regulations previously in effect are null and void.

"Article I.

"1. Rates of pay in passenger service will be: Conductors, $210.00 per calendar month. Brakemen, $150.00 per calendar month. Ten hours or less to constitute a day. Overtime pro rata.

"2. Rates of pay in freight work or mixed service will be: Conductors. $169.00 per month. Brakemen, $136.50 per month. Twenty-six days to constitute a month's work. Ten hours (10) or less to constitute a day. Overtime after ten hours pro rata."

The last-mentioned contract and schedule is referred to in the agreed statement of facts as Schedule D. The agreed statement of facts declares:

"That at the time of the formation and adoption of said Schedule D, effective June 16, 1916, it was appreciated by this company and its trainmen that the question of the national adoption on the part of the railroad brotherhoods of trainmen and the railway employees of the United States of an eight-hour day and time and one-half overtime basis for wages, was not settled, and that the matter was then an open question likely to be determined either by adoption or by rejection or by compromise and that inasmuch as the trainmen and employees of this defendant company, are and then were members of and affiliated with said National Brotherhood of Trainmen, in the event the eight-hour day and time and one-half overtime basis of wage schedule was either adopted or a compromise effected thereon, a further adjustment of wages would be necessary between this defendant and its trainmen upon said Schedule D, in conformity with the conclusion and agreement if reached between the said National Brotherhoods of Trainmen and said railway employers of the United States. Recognizing this contingency an express written agreement was executed between this company and its trainmen, in words and figures as follows, to wit:

" 'Agreement between the Train and Engine Men of the Arizona & New Mexico Railway Company and the Engine Men of the Coronado Railroad:

" 'In signing up the agreement between the train and engine men which is effective under date of June 16, 1916, it is mutually agreed between the parties to this agreement, namely, the Arizona & New Mexico Railway Company, the Coronado Railroad, the engine men of the Coronado Railroad, and the train and engine employees of the Arizona & New Mexico Railway, that in case, in the future, the employees ask for a new schedule based on either an eight-hour day or time and one-half for overtime, or both of these provisions, that the new schedule under date of June 16, 1916, will not be used as a basis on which to figure out rates of pay or working conditions, and that for the purpose of figuring a schedule under such eight-hour day or time and one-half for overtime, this schedule of June 16, 1916, will not be considered as having been in effect.' ".

The latter quoted agreement between the train and engine men of the plaintiff in error is referred to in the agreed statement as Schedule E, and the agreed statement of facts expressly states that the agreement between the train and engine men effective under date of June 16, 1916, referred to in Schedule E, is the agreement set forth in the aforesaid Schedule D.

The agreed statement of facts further declares that "the aforesaid agreements, excepting in so far as one may be affected by others, were in full force and effect at the time the Adamson Act became effective"; that the plaintiff in the case (defendant in error) entered into the employment of the plaintiff in error August 6, 1916, and continued in such employment to April 27, 1917, and that from August 6, 1916, to and including December 31, 1916, he was paid and receipted in full for all services performed by him under the provisions of Schedule D; that subsequent to the passage of the Adamson Act (Comp. St. §§ 8680a–8680d) the train employees of the plaintiff in error, including the defendant in error, insisted on Schedule D being "so changed as to apply to such schedule the eight-hour provisions of such Adamson Act, and that they be paid by such Schedule D on an eight-hour basis, with overtime in excess of eight hours at the same rate, but that defendant declined

so to do and thereafter paid such employees, including plaintiff, for such train service compensation computed on the basis of an application of the Adamson Act and its provisions to the compensation provided in Schedule A except in cases where by using the provisions of Schedule D without applying the Adamson Act, a greater compensation would result to such employees, including plaintiff, in which cases such compensation was computed and payments made in accordance with Schedule D, without applying the Adamson Act to plaintiff and other train employees."

The agreed statement of facts further shows that if, under the facts therein stated, it was the duty of the plaintiff in error to pay the defendant in error under Schedule A with the Adamson Act applied thereto, he would have earned and been entitled to receive $573.52; that if under such facts it was the duty of the company to pay the defendant in error under Schedule D with the Adamson Act applied thereto he would have earned and been entitled to receive $717.52; that if under such facts it was the duty of the company to pay the defendant in error under Schedule D he would have earned and have been entitled to receive for his services $645.75.

H. A. Elliott, of Clifton, Ariz., and E. W. Lewis, of Phœnix, Ariz., for plaintiff in error.

L. Kearney, of Clifton, Ariz., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The court below applied the Adamson Act to Schedule D and the agreement upon which it was based, and entered judgment accordingly, whereas the plaintiff in error insists that the provisions of that act are properly applicable only to the contract set forth in Schedule A.

The argument in support of the latter contention is that the agreement embodied in Schedule D was a contract between the plaintiff in error and its employees, to which none of the national organizations of railroad workers were a party; that by the supplemental agreement, designated in the agreed statement of facts as Schedule E, it was expressly stipulated by the parties to the contract embodied in Schedule D that the latter contract should not be used as a basis for fixing rates of pay or working conditions, and that thereby the preceding Schedule A was revived.

This is, in our opinion, a complete non sequitur. The necessary result of the plaintiff in error's argument, as well as from the agreed facts of the case, is, it seems to us, that as between the parties to the present case there existed at the time of the approval of the Adamson Act in September, 1916 (39 Stat. 721), no fixed schedule of rates as between these parties. The Adamson Act, the validity of which was sustained by the Supreme Court in the case of Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024, the provisions of which act became effective January 1, 1917, however, declared that pending the report of the commission provided for therein, and for a period of 30 days thereafter, the compensation of railway employees subject to the act, for a standard workday (specified and declared in its first section), should not be reduced below the existing standard day's wage, and that for all necessary time in excess of eight hours such employees should be paid at a rate not less than the pro rata rate for such standard eight-hour workday.

The agreed statement of facts shows that the defendant in error was paid by the plaintiff in error to and including December 31, 1916, at the rates specified in Schedule D. Such was the compensation under which he was actually working at the time the Adamson Act became effective, to wit, January 1, 1917, and we agree with the court below that for the nearly four months that the defendant in error continued in such employment he was entitled to be paid by virtue of sections 3 and 4 of the Adamson Act for an eight-hour day as much as he was then receiving for a ten-hour day—that act being expressly made applicable to a class which included the defendant in error.

For the reasons stated, we think the judgment must be, and it therefore is, affirmed.

---

⚘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes